J. Edward Kerley (175695)
Dylan L. Schaffer (153612)
**Kerley Schaffer LLP**
1939 Harrison Street, #500
Oakland, California 94612
Telephone: (510) 379-5801
Facsimile: (510) 228-0350

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**NALINI KUMAR,** an individual, **ALLEN SINGH**, an individual**.**

Plaintiffs,

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY,** a corporation **DOES 1-10,**

Defendants.

Case No. 21-CV-04479-TSH

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Nalini Kumar and Allen Singh, allege as follows:[1]

**PARTIES/OTHERS**

1. Plaintiffs are residents of Stockton, California.

2. Defendant Nationwide Mutual Insurance Company (Nationwide) is an Ohio corporation.

3. Lewis, Brisbois, Bisgaard & Smith, LLP (LBBS), is a law firm.

4. Julian Pardini (Pardini) is a partner at LBBS and counsel for Nationwide.

5. Shawn Dalton (Dalton) is an employee of Nationwide.

6. The true names and capacities of Defendants DOES 1 through 40 are unknown and are therefore sued by fictitious names. Each of the DOE Defendants is, in some manner, responsible for the damages alleged.

**JURISDICTION AND VENUE**

7. Plaintiffs bring this Complaint under federal diversity jurisdiction 28 U.S.C. §1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

8. Venue in this district is proper pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions on which the claim is based occurred in the Northern District of California.

**GENERAL ALLEGATIONS**

9. Plaintiffs purchased a policy of insurance by Nationwide, identified as policy number 7204HR030362 (Policy), insuring all risks of loss to Plaintiffs' dwelling, property, and contents (Property) at 2009 West Willow Street, Stockton, California, from April 2020 to April 2021.

---

[1] All allegations made in this complaint are based upon information and belief, except those allegations which pertain to the Plaintiffs, which are based on personal knowledge. The allegations of this Complaint stated on information and belief are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

10. Plaintiffs purchased the Policy from a Nationwide captive agent who was at all times an agent of Nationwide, and not of Plaintiffs.

11. In its communications with Plaintiffs, Nationwide failed to comply with the requirements of Ins. Code §10103.4, and 10 CCR §§2695.180-2695.183, by failing to include in its replacement cost estimate the expenses that would reasonably be incurred to rebuild the insured structure(s) in its entirety, including at least the following: (1) Cost of labor, building materials and supplies; (2) Overhead and profit; (3) Cost of demolition and debris removal; (4) Cost of permits and architect's plans; and (5) Consideration of components and features of the insured structures, which components are set forth in 10 CCR §2695.183.

12. Nationwide's violations of the law and regulations set forth in the preceding paragraph amount to a violation of Ins. Code §790.03, 10 CCR §2695.183(j), evidence of its breach of the implied covenant of good faith and fair dealing.

13. The Policy provided the following coverages, among others: building repairs ($249,000), extended replacement benefits for building repairs ($124,500), contents ($186,750), and loss of use (sustained up to 24 months).

14. On or about July 4, 2020, the Property was damaged by fire. Plaintiffs promptly made a claim. Nationwide assigned the claim number IY008345-55 (Claim).

15. Damage to the Property, and its contents was predominantly caused by a peril covered under the Policy, *i.e.*, fire, which triggered Plaintiffs' entitlement to payment under all Policy coverages, including but not limited to repairs of the real property, repair and replacement of contents, debris removal, and loss of use.

16. Plaintiffs satisfied all conditions under the Policy for payment of the Claim.

17. Nationwide assigned Dalton to investigate the claim. Dalton, who is neither licensed nor qualified to estimate the cost of repairs, conducted an inadequate investigation and produced a lowball estimate for damage to the home and other structures, among other repairs, in or about July 13, 2020.

18. Dalton's estimate for repairs to the dwelling of approximately $36,000 was a small fraction of the true cost to repair the dwelling owing under the Policy and reflected the lack of any competent investigation by a licensed building professional.

19. Nationwide thus failed to conduct a thorough and objective investigation of all bases of the claim by failing to retain licensed professionals to determine the extent of fire damage to the Property.

20. Although Nationwide had 40 days to pay its own repair estimate, Nationwide failed to pay any funds for repair of the home at any time, in violation of California law and regulations.

21. Thereafter, in July 2020, Nationwide received an estimate for repairs to the dwelling from a licensed contractor for approximately $93,000 for repair of the dwelling. That repair estimate, too, was far short of what it will require to return the home to its pre-loss condition but came nearer to the true amount of repair benefits Nationwide owed under the Policy and California law, including but not limited to Ins. Code §2051.

22. Although Nationwide had 40 days to pay, deny, or adjust the repair estimate, Nationwide failed to respond to the estimate or to pay the claim, in violation of California law and regulations.

23. In August 2020 Plaintiffs delivered an inventory for replacement of non-salvageable contents in the amount of approximately $34,000.

24. Although Nationwide had 40 days to pay, deny, or adjust the repair estimate, Nationwide failed to respond to or pay the claim, in violation of California law and regulations

25. Nationwide has a pattern and practice of delaying payment of undisputed amounts to pressure customers, like Plaintiffs, who are out of their homes, to accept its lowball offers for structural repairs and replacement of personal property.

26. Having maliciously and oppressively delayed for six months paying the undisputed amount for repairs of the home, or paying any portion of the contents claim, and being aware that Plaintiffs and their two young children were unable to reside at the Property in

the midst of the COVID-19 pandemic, Nationwide concluded that in attempt to avoid civil liability it would find a pretext for its prior delay and failure to pay benefits, and its planned future delay and failure to pay benefits, by referring the loss for investigation to Nationwide's special investigations unit (SIU) for an investigation into potential insurance fraud.

27. The referral was itself malicious and unreasonable: Nationwide had by that time known for months the cause of the loss and known that Plaintiffs had no role in causing the loss. Likewise, Nationwide had no evidence that Plaintiffs had committed fraud in the claim. The SIU referral was entirely pretextual, an effort to cover-up its prior bad faith, malice and oppression in the investigation and adjusting of the claim.

28. Nationwide and Dalton are aware that LBBS and Pardini specialize in entering claims that have been mishandled by carriers and attempting by use of threats, harassment, and abuse of policyholders to avoid further indemnity obligations and exposure to tort liability.

29. Nationwide, Dalton, and Dalton's supervisors and managers are aware that Nationwide, Mercury, California Fair Plan Association, and other carriers routinely retain Pardini and/or LBBS for this purpose.

30. Nationwide and Dalton routinely hire LBBS and Pardini as claims adjusters where they may be subject tort liability because by hiring lawyers to act as claims adjusters they (a) shield from review by policyholders and discovery in lawsuits their communications with carriers as relates to claims handling and (b) obtain a potential defense under California law which may insulate a carrier for conduct advised by a lawyer.

31. Nationwide, Dalton, and Dalton's supervisors and managers know LBBS and Pardini are not being hired to provide coverage or other legal advice, but rather to intimidate, create pretext, harass, and abuse lay policyholders in an effort to investigative costs, indemnity, and tort liability.

32. Nationwide hired LBBS and Pardini for the exclusive purpose of harassing, burdening, and abusing Plaintiffs to pressure them to accept less than they are owed under the Policy, including but not limited to insisting on participating in an unnecessary Examination

Under Oath (EUO), requiring them to pay counsel to defend their interests in the claim, insisting that they produce documents unnecessary to the investigation or handling of the claim (in violation of 10 CCR §2695.7(d)), and violating their rights under California law as relates to their participation in an EUO, which are set forth in Ins. Code §2071.1.

33. Nationwide and Dalton's practice is to hire LBBS and Pardini because LBBS and Pardini are predisposed to handle claims in favor of Nationwide and against insureds. Nationwide knows that LBBS and Pardini are biased and hires the firm and the lawyer routinely because of the bias.

34. Pardini and LBBS provide biased assistance to Nationwide and other California property carriers in return for fees and promise of future referrals.

35. LBBS and Pardini's bias is proven by, among other circumstances, the large amount of fees paid by Nationwide and other property insurance carriers to LBBS and Pardini in this and other property insurance disputes.

36. Nationwide's practice is to hire LBBS and Pardini to act as claims adjusters to intimidate and harass its customers in an attempt to reduce its claims costs and indemnity, to hide its claims adjusting in purportedly privileged communications and work product, and to create evidence designed to cover-up Nationwide's prior failure to investigate, its unconscionable delay in the case of a family without a home, and its unreasonable, malicious, and oppressive to pay Plaintiffs for repairs to the Property and replacement of their personal property.

37. After Nationwide hired LBBS and Pardini for the Claim, LBBS and Pardini began to communicate with Plaintiffs on behalf of Nationwide beginning in December 2020.

38. On December 31, 2020, LBBS and Pardini wrote to Plaintiffs to demand that they take part in an Examination Under Oath (EUO) as part of Nationwide's sham, baseless, and pretextual fraud investigation and set the EUO for a date two weeks later. LBBS and Pardini also sought to pressure and harass Plaintiffs by demanding a large number of documents in violation of 10 CCR §2695.7(d). Many of the documents requested were either or both confidential

financial information or unnecessary to Nationwide's adjusting of the claim, which it had already determined was a covered fire loss but failed to competently investigate or pay.

39. Thereafter, Plaintiffs retained counsel to assist them at the EUO.

40. Counsel for Plaintiffs contacted Pardini on January 4, 2021. Counsel for Plaintiffs, who was unavailable on the date unilaterally selected by Nationwide and Pardini, repeatedly sought dates for the EUO. Nationwide and Pardini continued to delay as had been its practice in the claim. It was not until February 17, 2021, that Nationwide and Pardini provided a date for the EUO.

41. Plaintiffs spent hours amassing documents requested by Nationwide, LBBS and Pardini and as a courtesy to Nationwide, LBBS and Pardini, delivered those documents to Pardini and Nationwide days in advance of the EUO, just as LBBS and Pardini had demanded.

42. As they have two small children, Plaintiffs took time off work and obtained childcare in order to attend the EUO at Nationwide's insistence.

43. On the morning of February 25, 2021, Dalton, and LBBS and Pardini appeared for the first EUO, that of Plaintiff Singh.

44. Due to the COVID-19 pandemic, Nationwide and its counsel (LBBS/Pardini) set the proceeding to occur remotely, with all parties appearing on Zoom.

45. Ins. Code §2071.1(a)(4) permits an insured subject to EUO to "record the examination proceedings in their entirety . . . ."

46. The word "entirety" means *complete, whole,* and *without any part being omitted.*

47. As a matter of law, Plaintiffs' insurance policy incorporates the provisions in Ins. Code §2071.1, and thus the rights afforded by the statute are part of the insurance contract and any violation of those rights amounts to a breach of the contract and breach of the implied duty of good faith and fair dealing.

48. Had the appearance been in person, exercising their rights under Ins. Code § 2071.1(a)(4), which permit an insured to "record the examination proceedings in their entirety,"—that is, the *whole of the proceedings,* Plaintiffs would have recorded the proceeding

by use of a video camera, and would have thereby captured moving video images, and synched audio, of all participants and spectators in the room, including the taking lawyer, any Nationwide representative, witness, defending lawyer, court reporter, and any others present.

49. In the first scheduled session on February 25, 2021, Mr. Singh and his counsel appeared by audio and video, as did the reporter and Nationwide's agents.

50. Because all participants appeared remotely, at Plaintiffs' request, the Court reporter enabled the recording function within Zoom so all parties were able to record the entirety of the proceedings, including Mr. Singh, whose right to do so is provided by Ins. Code §2071.1(a)(4), and is incorporated by law into the Policy

51. Mr. Singh, his counsel, and the reporter agreed to appear on video and be recorded pursuant to Ins. Code §2071.1(a)(4).

.52. Nationwide and its agents, Dalton and Pardini, refused to appear on any video recording.

53. Nationwide and its agents terminated the EUO due to Mr. Singh's exercise of his rights under the Policy and California law to record the examination proceedings in their entirety, including video images of all participants.

54. Ms. Kumar's EUO was scheduled for the afternoon of February 25, 2021. Nationwide and its agents chose not to go forward with the EUO of Ms. Kumar because of their continuing unwillingness to proceed in the event Plaintiff or either of them exercised their rights under Ins. Code §2071.1 and the Policy to record the examination proceedings in their entirety.

55. Having set the EUO for February 25, 2021, and at that time refused to go forward with the EUO, Nationwide thereby breached the contract and forfeited its rights under the Policy to require Plaintiffs to undergo an EUO as a condition of Nationwide's obligations under the Policy, including but not limited to its obligation to pay policy benefits for repairs to the Property, repair and replacement of contents, debris removal, and payment of loss of use benefits.

56. After the EUO, the same day, Plaintiffs invoked their right to appraisal under the Policy and Ins. Code §2071, naming their appraiser.

57. Pursuant to the Policy and California law, Nationwide had 20 days to name its appraiser, but consistent with its prior conduct, the insurer, through its claims adjuster LBBS/Pardini, Nationwide failed to abide by its obligation under the contract to enter into the appraisal to determine policy benefits for repair of the home and replacement of contents. Nationwide intentionally breached the contract by failing to agree to participate in appraisal as provided by the Policy and the law.

58. On April 14, 2021, LBBS/Pardini, as claims handler for Nationwide, wrote to Plaintiffs to deny their claim in its entirety. The denial was based on the following alleged failure to cooperate in Nationwide's investigation of the claim:

- failure to appear for the EUO, although both Plaintiffs did appear; and
- failure to deliver documents requested by Nationwide, although all requested documents available to Plaintiffs were delivered in a timely manner to Nationwide.

59. After the denial Nationwide cut off Plaintiffs' loss of use benefits although Nationwide was aware that Plaintiffs' home was not habitable, and that Nationwide had failed to pay any benefits for repair of the property or replacement of destroyed contents necessary to inhabit the house including but not limited to furniture, mattresses, and carpeting.

60. After receipt of the denial, Plaintiffs' counsel wrote to LBBS/Pardini to inform Nationwide's claims handling agents that in fact, contrary to the assertions in the denial letter, all responsive documents had been produced in advance of the EUO, and that Nationwide had failed to review the file produced adequately and had erroneously concluded only a small number of documents had been delivered.

61. On April 19, 2021, Pardini wrote to counsel for Plaintiffs admitting Nationwide had failed to review the documents submitted by Plaintiffs in advance of the EUO and thus

admitting that the assertion in the denial letter that Plaintiffs had failed to deliver the requested documents was false, and thus that one basis for the denial was unsupported by the facts.

62. Notwithstanding the admission of the error, Nationwide did not withdraw its denial, or correct the now admittedly false statements in its original denial letter.

63. Restoration Cleanup Company (RCC), a Nationwide preferred vendor, was referred by Nationwide, to conduct a pack out and contents inventory at the Property. RCC completed its work and sent an invoice to Nationwide. Nationwide refused to pay the invoice although at the time of the referral Nationwide had indicated it was covering Plaintiffs' claim. Thereafter, RCC demanded payment from Plaintiffs although Nationwide had agreed to cover the cost of RCC. RCC's demands for money Plaintiffs cannot pay, and which Nationwide had agreed to pay, further added to the consequential damages caused by Nationwide's bad faith and malice.

64. FrstTeam provided services on behalf of Nationwide to clean and restore some contents at the house. Nationwide agreed to pay FrstTeam but then denied the claim, leaving Plaintiffs liable for FrstTeam's bill which they cannot pay, further adding to the consequential damages caused by Nationwide's bad faith and malice.

65. Golden Coast Construction and Restoration provided emergency board up services following the fire. Nationwide ordered Plaintiffs to hire a board up company to avoid further damage to the property, which was Plaintiffs' obligation under the contract. Nationwide thereafter refused to compensate Golden Coast for its work, further adding to the consequential damages caused by Nationwide's bad faith and malice.

## FIRST CAUSE OF ACTION - BREACH OF CONTRACTUAL DUTY TO PAY COVERED CLAIM

66. Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth in this First Cause of Action against Nationwide and DOES 1-10.

67. Plaintiff suffered a loss covered under the Policy.

68. Plaintiffs fulfilled all conditions of the Policy following the Loss, including timely notification to Nationwide and DOES 1-10.

69. In the manner previously alleged, Nationwide and DOES 1-10 breached the contract by failing to pay policy benefits for benefits including but not limited to replacement and/or repair of the Property, replacement and/or repair of personal property, loss of use, and/or other coverages as required by the Policy and California law.

70. As a direct and proximate result of Nationwide's and DOES 1-10's breach of their duty to pay a covered claim, Plaintiffs sustained an uncompensated loss and foreseeable consequential damages.

**SECOND CAUSE OF ACTION -**
**INSURANCE BAD FAITH**

71. Nationwide and DOES 1-10 breached the covenant of good faith and fair dealing, by, among other things:

a. Failing to diligently conduct a thorough and objective investigation of all bases of the claim as relates to the Property and its contents;

b. Improperly, unreasonably, and maliciously delaying, denying and/or underpaying Policy benefits due pursuant to the Claim and for the Loss, including for remediation, abatement, repairs, replacement of contents, and loss of use;

c. Fraudulently and maliciously initiating a fraud investigation of Plaintiffs to delay payment of policy benefits, and to pressure Plaintiffs to accept less than they are owed under the Policy for the claim;

d. Hiring LBBS and Pardini for the purpose of harassing, burdening, and abusing Plaintiffs to pressure them to accept less than they are owed under the Policy, including but not limited to insisting on participating in an unnecessary EUO, requiring them to pay counsel to defend their interests in the claim, insisting that they produce documents unnecessary to the investigation or handling of the claim, and violating their rights under California law as relates to their participation in an EUO;

e. Maliciously refusing to take part in an appraisal as provided by the Policy and the law;

f. Fraudulently misrepresenting and/or concealing benefits under the Policy for the Claim and Plaintiffs' rights under California law and regulations as applies to homeowners' property claims;

g. Failing to reconsider its denial after being informed, and conceding, that the denial was in part based on an error by LBBS and Pardini as relates to the delivery to Nationwide and its agents of requested documents;

h. Intentionally violating Insurance Code § 790.03(h) and Fair Claims Settlement Practices Regulations §§ 2695.1 et seq. in settling the Claim; and

i. Requiring Plaintiffs to obtain counsel and file a lawsuit in order to obtain amounts owed under the Policy.

72. As a direct and proximate result of Nationwide's and DOES 1-10's breach of the covenant of good faith and fair dealing, malice, fraud and oppression by the intentional delay and withholding of benefits under the Policy, Plaintiffs have lost contract benefits under the Policy, sustained consequential damages, and incurred attorney's fees and costs in seeking enforcement of the rights under Policy.

73. In doing the things set forth above, Defendant and Does 1-10 acted intentionally with fraud, malice and oppression in that they knowingly and intentionally violated Plaintiffs' rights under the Policy and California law for the purpose of delaying payment of Policy benefits and depriving Plaintiffs of the Policy benefits. Plaintiffs are therefore entitled to exemplary damages in an amount in accordance with the evidence introduced at trial.

74. Shawn Dalton, Julian Pardini, and their supervisors and managers and Nationwide, among others, made, authorized, or ratified all of the investigation, claims handling, claims adjustment, and payment decisions vis a vis Plaintiffs' Claim. They are the managing agents of Nationwide pursuant to Civil Code § 3294 because they exercised substantial

independent authority and judgment in their corporate decision-making such that their decisions ultimately determined corporate policy for Plaintiffs' Claim.

75. As further evidence that the various acts of bad faith, malice, fraud and oppression set forth above were done knowingly, deliberately, and intentionally, each of the acts of bad faith, malice, fraud and oppression set forth above are part of a pattern of institutional bad faith by Nationwide, designed to reduce claims costs and expenses. Specifically, in the investigation and adjustment of first party property claims in California, Nationwide and its subsidiary and related entities routinely engage in the following acts of bad faith, which violate California law:

a. Illegally incentivizing claims personnel to minimize the payment of Policy benefits by awarding bonuses, financial incentives, and raises to claims employees in violation of Insurance Code §816;

b. Misrepresenting pertinent facts in violation of Insurance Code §790.03(h)(1) and 10 CCR §2695.4(a) regarding Nationwide's obligation under Insurance Code §2051 to pay the amount it would cost an insured to repair or replace damaged property;

c. Misrepresenting pertinent facts in violation of Insurance Code §790.03(h)(1) and 10 CCR §2695.4(a) regarding Nationwide's obligation under Insurance Code §2051.5 to pay the amount insureds reasonably spend to repair or replace damaged property;

d. Misrepresenting pertinent facts in violation of Insurance Code §790.03(h)(1) and 10 CCR §2695.4(a) regarding Nationwide's lack of obligation to pay replacement and repair costs under Insurance Code §2051.5 in the event insureds do not seek approval from Nationwide before undertaking repairs or in the event insureds replace their total loss property at a separate location;

e. Misrepresenting pertinent facts in violation of Insurance Code §790.03(h)(1) and 10 CCR §2695.4(a) insureds right to recover, upon repair or replacement of the property, more than recoverable depreciation;

f. Unreasonably delaying payment of policy benefits by insisting that insureds satisfy conditions not required by the policy or the law;

g. Failing to pay policy benefits for repair of the dwelling in violation of §790.03(h)(5) and §2051;

h. Failing to pay policy benefits or delaying payment of policy benefits for repair or replacement of contents in violation of §790.03(h)(5);

i. Failing to pay policy benefits for loss of use in violation of §790.03(h)(5);

j. Taking illegal depreciation in paying actual cash value under Insurance Code § 2051(b);

k. Failing to adequately explain in writing to insured the basis for depreciation taken in adjusting the actual cash value of insured's dwelling repairs in violation of 10 CCR § 2695.9(f);

l. Failing to diligently conduct a fair, thorough, and objective investigation of claims in violation of 10 CCR § 2695.7(d);

m. Breaching the policy and the law refusing requests by insureds to take part in appraisal of insurance claims;

n. Falsely asserting fraud allegations against insureds for the purpose of delaying or denying payment of policy benefits;

o. Intentionally hiring biased counsel to threaten, harass, burden, and abuse policyholders for the purpose of delaying or denying payment of policy benefits; and

p. Requiring insureds to obtain counsel and file a lawsuit in order to obtain amounts owed under the Policy in violation of Insurance Code § 790.03(h)(6).

76. The Nationwide claims personnel and agents who participated in the investigation and adjusting of Plaintiffs' Claim, including Dalton and Pardini and their managers and supervisors, are likewise part of Nationwide's institutional bad faith and have themselves engaged in each of the foregoing practices deliberately designed by Nationwide to increase its profitability by reducing indemnity payments and claims expenses.

**THIRD CAUSE OF ACTION – NEGLIGENT FAILURE TO OBTAIN INSURANCE COVERAGE**

77. Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth in this First Cause of Action against Nationwide and DOES 1-10.

78. In or about April 2018, after reviewing marketing and advertising material from Nationwide on the Internet, Plaintiffs called a Nationwide captive sales agent to seek insurance for the Property.

79. In that call, Plaintiffs provided detailed information about the Property. Plaintiffs explained that a structure behind the home was connected to the house by a contiguous patio, connected foundation, wood walkway, electric and plumbing lines, and would be considered by Plaintiffs to be part of the living space.

80. Plaintiffs further explained that the rear structure had finished areas including but not limited to a bathroom.

81. Aware that the rear structure would be part of the area of regular use as living space by their family, Plaintiffs expressly sought adequate insurance to repair and replace the rear structure in the event of a loss.

82. Plaintiffs repeatedly emphasized that the rear structure was living space that should be part of the insurance coverage.

83. Nationwide's captive sales agent told Plaintiffs that Nationwide would ensure the family had sufficient insurance to rebuild the entire house, including the finished rear structure, in the event of a covered loss.

84. Plaintiffs' request for adequate insurance for the rear structure was targeted and specific, thus rendering Nationwide liable for any failure to provide the requested insurance.

85. In determining the extent of insurance needed to repair and/or replace all components of the property, Plaintiffs relied on the representations of Nationwide's captive agent, as well as Nationwide's rebuild estimate.

86. Nationwide was negligent in failing to obtain the promised insurance because (a) if the rear structure was part of the primary insured property the total coverage for repair or replacement of the Property was inadequate and/or (b) if the rear structure is considered an appurtenant structure, the policy limits coverage for the rear structure were inadequate.

87. Plaintiffs were harmed because the insurance provided was inadequate to repair and/or replace all components of the property following the covered loss in July 2020.

88. Nationwide's negligence was a substantial factor in causing Plaintiffs' harm, including but not limited to insufficient coverage under the Policy to complete repairs following the covered loss at the Property.

**FOURTH CAUSE OF ACTION – NEGLIGENT MISREPRESENTATION**

89. Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth in this First Cause of Action against Nationwide and DOES 1-10.

90. In April 2018, after hearing Plaintiffs describe the nature of the rear structure at the Property, and its intended use, as well as Plaintiffs' express request for sufficient insurance to cover repair and/or replacement of the rear structure in the event of a covered loss, Nationwide's captive agent represented to Plaintiffs that the insurance policy being provided would provide sufficient coverage in the event the rear structure required repair or replacement.

91. Nationwide and DOES 1-10 representation as set forth in the preceding paragraph was not true, whether or not the rear structure is considered part of the primary insured structure or an appurtenant structure.

92. Nationwide and DOES 1-10 had no reasonable grounds for believing the representations were true when they made them because in fact the Policy offers insufficient coverage to repair and/or replace the rear structure, whether it is considered part of the primary insured property or an appurtenant structure..

93. Nationwide and DOES 1-10 intended that Plaintiffs rely on their representations in purchasing the Policy.

94. Plaintiffs reasonably relied on the representations in purchasing the Policy.

95. Plaintiffs' reliance on the false representations was a substantial factor in causing the harm suffered, including their inability to replace the destroyed rear structure.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants:

1. for general and special damages;
2. for attorneys' fees and costs;
3. for exemplary damages;
4. for pre-judgment and post judgment interest;
5. for costs of suit herein; and
6. for such other relief as the Court finds just and proper.

Date: October 26, 2021

Kerley Schaffer LLP

Dylan L. Schaffer
Attorneys for Plaintiffs

**DEMAND FOR JURY TRIAL**

Plaintiffs request a jury trial.

Date: October 26, 2021

Kerley Schaffer LLP

Dylan L. Schaffer
Attorneys for Plaintiffs

**PROOF OF SERVICE**
*Kumar, et al. v. Nationwide Mutual Insurance Company, et al.*
United States District Court Northern District of California
Case No. 3:21-cv-04479-TSH

I declare that I am over the age of 18 years and not a party to this action. My business address is 1939 Harrison Street, #500, Oakland, CA 94612. On October 26, 2021, I served the following on the interested parties in this action:

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

SONIA MARTIN
MENGMENG ZHANG
**DENTONS US LLP**
One Market Plaza, Spear Tower, 24th Floor
San Francisco, CA 94105
Telephone: (415) 267-4000
Facsimile: (415) 267-4198
E-mail: sonia.martin@dentons.com
mengmeng.zhang@dentons.com
*Attorneys for Defendant Nationwide Mutual Insurance Company*

☐ **MAIL:** By placing such documents(s) in a sealed envelope, with postage prepaid for first class mail, for collection and mailing at Oakland California following ordinary business practice for deposit with United States Postal Service.

☐ **FAX**: By causing to be transmitted the documents by use of fax machine telephone number (510)228-0350 to the parties at the facsimile numbers listed on the service list above. The fax machine used complies with California Rule of Court 2.301. The transmission was reported as complete and no error was reported by the machine. I caused the transmitting machine to print a record of the transmission, a copy of which is attached to this declaration.

☐ **E-MAIL**: By electronic mail to the addresses noted above.

☒ **PACER**: By PACER when sent to the court for filing.

☐ **FEDEX:** By placing for overnight delivery such documents(s) in a facility or box that is regularly maintained by FedEx.

☐ **HAND DELIVERY:** Caused to be hand delivered.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true, and if called as a witness I could testify competently thereto. This declaration was executed October 26, 2021, at Oakland, California.

Tiffany Chang